IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL J. GOODSON, III,          )
               Plaintiff,  )
                         )     Civil Action No. 03-564
       vs.                       )
                         )     Judge Gary L. Lancaster /
                         )     Magistrate Judge Lisa Lenihan
CALVIN A. LIGHTFOOT, Warden,     )
A.C.J.; JAMES J. DONNIS,         )
Major ACJ; RONALD POFI, Capt.    )
Internal Affairs ACJ; LOUIS      )
LEON, Lt. ACJ; EMMERICK, Dep.    )
Warden A.C.J.; JIMMY HONNICK,    )
Sgt. ACJ,                        )
               Defendants.  )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no. 38) and Plaintiff's Motion for Summary Judgment (doc. no. 35) both be denied.

### II. REPORT

Plaintiff, Daniel J. Goodson, III, an inmate previously incarcerated at the Allegheny County Jail (ACJ) located in Pittsburgh, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Remaining Defendants include: Calvin Lightfoot, Warden; James J. Donnis, Major; Ronald Pofi, Capt. Internal Affairs, Louis Leon, Lieutenant; Emmerick, Deputy Warden; and Jimmy Honnick, Sergeant. Plaintiff claims that Defendants conspired together to commit illegal activities including placing and keeping him in restricted housing without any write-up, confiscating his legal and personal mail and personal property, denying him access to legal materials, depriving him of his right to communicate with family and friends, confining him in

the DHU without a mattress for over 24 hours, denying him personal hygiene products for 30 days, and denying him his prescription glasses for 30 days.  Plaintiff claims that these actions were taken in retaliation for his statements to Captain Pofi wherein he accused several ACJ officials of having sexual relations with ACJ inmates.  Plaintiff's remaining claims in this action concern the alleged censorship and confiscation of his mail; his retaliation claim; his Eighth Amendment claims; and his claims of conspiracy. For the reasons that follow, both Plaintiff's Motion for Summary Judgment (doc. no. 35) and the Defendants' Motion for Summary Judgment (doc. no. 38) should be denied.

## A. Standard of Review

Both parties have filed motions for summary judgment.  Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case.").  The moving party bears the initial burden of identifying

2

evidence that demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a <u>genuine issue for trial</u> . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).

## B. Plaintiff's Allegations

In his Complaint, Plaintiff alleges the following.  As to Defendant Warden Lightfoot, Plaintiff asserts that he was notified on several occasions of the violation of Plaintiff's rights. Specifically, Plaintiff asserts that Defendant Lightfoot was made aware of staffs' sexual relations with female inmates, as well as internal affairs department compromising confidential information which led to repercussions to Plaintiff including bodily harm for which Plaintiff had to seek assistance of a family attorney to obtain medical treatment.  Plaintiff further alleges that Defendant Lightfoot allowed his staff to censor and confiscate all of his incoming and outgoing mail, including his confidential legal mail. He further complains that he was denied access to all legal resources while he was in the Disciplinary Housing Unit (DHU) in retaliation for his complaining about his mistreatment and that he missed several court deadlines as a result.  In addition, he states

that he was confined in the DHU without a mattress for 24 hours and he was denied his prescription glasses, personal hygiene products and personal medication for thirty days.  Plaintiff alleges that all of this was done while conspiring with the other Defendants in this action.  He further alleges that there was no writeup for his confinement in the DHU and that after he was released, he was returned to the DHU for another week after being assaulted by Major Donnis.

As to Defendant Deputy Warden Emmerick, Plaintiff makes the following allegations.  Between November 26, 2002 through January 31, 2003, Defendant Emmerick was the Deputy Warden as well as the head of the Prison Review Committee (PRC).  The PRC conducted monthly reviews of cases in the DHU.  Plaintiff spoke with Defendant Emmerick twice during this period informing him of the cruel and unusual punishment he was experiencing.  Defendant Emmerick told Plaintiff that he would speak to Major Donnis and have Plaintiff released from the DHU prior to the New year.  At the second meeting, Defendant Emmerick asked Plaintiff why he was still in the DHU when there was no write up on him.  Plaintiff contends that Defendant Emmerick was aware of his situation and but did nothing to alleviate the situation allowing it to go on for two months.  He further alleges that Defendant Emmerick conspired with the other Defendants in the deprivation of his constitutional rights.

As to Defendant Major Donnis, Plaintiff makes the following allegations.  On November 26, 2002, Defendant Donnis interviewed

Plaintiff alone in the DHU after removing his handcuffs.  Defendant
Donnis told Plaintiff that Captain Pofi of Internal Affairs had
told him about Plaintiff's accusations about staff having sexual
relations with the female inmates.  Defendant Donnis told Plaintiff
that he had implicated his cousin, Lt. Leon, and threatened
Plaintiff that he had better be careful.  Defendant Donnis
conspired with the other Defendants to violate Plaintiff's
constitutional rights.

As to Defendant Pofi, Plaintiff makes the following
allegations.  On November 26, 2002, Defendant Pofi interviewed
Plaintiff at the DHU in Lt. Leon's office.  During the interview,
Plaintiff made several serious accusations against certain jail
officials who allegedly were having sexual relations with female
inmates.  All of the jail officials identified by Plaintiff,
including Major Donnis, Lt. Griffin, Lt. Leon, Sgt. Moore, CO
Cotton, CO Butler and CO Lacey, were told about the accusations.
Plaintiff also was questioned about tatoos and breast enhancements
of CO Pachia with whom he was alleged to have had sexual relations
with.  Plaintiff alleges that there existed a huge love triangle at
the ACJ with the participants bringing drugs and contraband to
several inmates.  Defendant Pofi also confiscated Plaintiff's mail
without returning it to him.

As to Defendant Louis Leon, Plaintiff makes the following
allegations.  Between November 26, 2002 and January 31, 2003,
Defendant Leon was the Supervisor/Unit Manager of the 8th Floor of
the ACJ.  During this time, Leon conspired with other Defendants to

violate his constitutional rights by denying him a mattress, his prescription medications, and his prescription eyeglasses. Defendant Leon refused to allow him to use his personal phone although other inmates were allowed to do so. Plaintiff alleges that his statements to Internal Affairs about Defendant Leon's live-in girlfriend, CO Palachia, and his love triangle with Lt. Griffin, resulted in the violation of his constitutional rights by Defendant Leon.

As to Defendant Sergeant Jimmy Honick, Plaintiff makes the following allegations. On November 25, 2002, Defendant Honnick conspired with Defendants and C.O. Virgilli (librarian officer) to plant fake notes in library books and then accuse Plaintiff of writing such notes, which resulted in Plaintiff being placed in DHU custody. Defendants did not follow jail policy procedures in placing Plaintiff in DHU custody where he remained for a two month period.

## C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against the Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He or she must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535

(1981), *overruled in part on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986).

All of the Defendants acted under color of state law for purposes of establishing liability under 42 U.S.C. § 1983.  Thus, the question is whether any of the Defendants violated Plaintiff's constitutional rights.[1]   His remaining claims are discussed separately below.

### 1. <u>Retaliation</u>

Plaintiff claims that Defendants retaliated against him for his whistle blowing to Internal Affairs about the alleged sexual scandal at the ACJ and for complaining about his treatment in the DHU.   This claim also invokes the protections of the First Amendment.  In this regard, it is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under section 1983.  <u>Rauser v. Horn</u>, 241 F.3d 330 (3d Cir. 2001); <u>White v. Napoleon</u>, 897 F.2d 103, 112 (3d Cir. 1990).  However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things:  (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in

---

[1]   Defendants mistakenly have assumed that Defendant Lightfoot is the only remaining Defendant in this action. However, Plaintiff's claims, particularly his conspiracy claims, assert liability against all of the remaining Defendants.

7

the state actor's decision to take the adverse action.   *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).   If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors.   Mt. Healthy, 429 U.S. at 287.   "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."   Rauser, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner.   *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Again, Defendants did not address Plaintiff's retaliation clam in their Motion.   Moreover, Plaintiff has sufficiently alleged a retaliation claim.   Specifically, Plaintiff alleges that Defendants took adverse action against him because he told Internal Affairs about alleged sexual affairs at the ACJ and complained about the conditions of his confinement in the ACJ.   Thus, Plaintiff's retaliation claim remains to be addressed in this action.

2. <u>Confiscation of Mail</u>

Plaintiff also raises claims that Defendants censored and confiscated his incoming and outgoing mail, including his legal mail.  Under Supreme Court law, these two types of activities are analyzed differently.  In <u>Procunier v. Martinez</u>, 416 U.S. 396 (1974), the court reviewed a state's procedures for censoring inmates' outgoing correspondence.  In its review, the Court was concerned with the fact that censorship of prisoners' outgoing mail affected the First and Fourteenth Amendment rights of the addressee as well as the sender of the correspondence.  In light of that recognition, the Court held that censorship of outgoing prisoner mail is justified when:  1) the regulation or practice furthers an important or substantial governmental interest unrelated to the suppression of expression; and 2) the limitation is no greater than is necessary or essential to the protection of the particular governmental interest involved.  <u>Martinez</u>, 416 U.S. at 413.

In addition, the Court held that "the interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment."  *Id*. at 418.  As such, the Court required that "an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the

9

correspondence." *Id*. at 418-19.  Later, in <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413 (1989), the Court limited the holding in <u>Martinez</u> as applicable only to regulations concerning outgoing correspondence.

In another case, <u>Turner v. Safley</u>, 482 U.S. 78 (1987), the Court was presented with a different situation.  In <u>Turner</u>, at issue was the propriety of a regulation that prohibited correspondence between inmates in different institutions.  Noting that the challenged regulation did not involve the rights of non-prisoners, the Court distinguished its decision from that in <u>Martinez</u>, where its holding "turned on the fact that the challenged regulation caused a 'consequential restriction on the First and Fourteenth Amendment rights of those who are not prisoners.' " <u>Turner</u>, 482 U.S. at 85 (quoting <u>Martinez</u>, 416 U.S. at 409).  In <u>Turner</u>, the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. at 89.  The court then listed four factors to consider in determining the reasonableness of a regulation:  1) whether there is a rational connection between the regulation and the government interest; 2) whether there are alternative means available to the prisoner of exercising the affected right; 3) the impact accommodation of the constitutional right will have on guards and other inmates; and 4) that the absence of ready alternatives is evidence of a regulation's reasonableness. *Id*. at 89-91. Applying these factors to the regulation before it, the Court had little difficulty in

10

concluding that the prohibition on correspondence between inmates in different institutions was reasonably related to legitimate security concerns.

In the case at bar, Defendants again did not address any of Plaintiff's claims concerning the censorship and confiscation of his mail. Accordingly, these claims remain to be addressed in this action.

### 3. Eighth Amendment

Plaintiff alleges that he was denied his prescription medication, personal hygiene products, and eyeglasses for thirty days. He further claims he was denied a mattress for 24 hours. He also asserts that he suffered bodily harm as a result of his whistle-blowing activities and had to seek assistance from a family attorney to receive medical aid at the ACJ. These allegations assert liability under the Eighth Amendment.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In addition, the Cruel and Unusual Punishments Clause of the Eighth Amendment protects inmates against the application of excessive

force by correctional officers.  Whitley v. Albers, 475 U.S. 312, 318-19 (1986).

Defendants briefly addressed Plaintiff's Eighth Amendment claim in its Motion by asserting that Plaintiff's claim asserted denial of luxury items, which does not state an Eighth Amendment claim.  They further asserted that Plaintiff's allegation of denial of his prescription glasses for one day did not state a claim.  However, Plaintiff alleged that he was denied his prescription medication, personal hygiene products, and eyeglasses for thirty days and that he was denied a mattress for 24 hours.  While the court agrees that the one-day mattress deprivation would not rise to a constitutional violation, Defendants completely ignored Plaintiff's other allegations.  Thus, they have not demonstrated that they are entitled to judgment as a matter of law with respect to Plaintiff's Eighth Amendment claims.

### 4. Conspiracy

Plaintiff also asserts liability against Defendants based on his allegations of conspiracy.  In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'"  Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).  A plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants.  Bieros v. Nicola, 860 F. Supp. 223,

225 (E.D. Pa. 1994) (citing <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993)).   A complaint alleging a conspiracy must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." <u>Spencer v. Steinman</u>, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997). *See also* <u>Loftus v. Southeastern Pa. Transp. Auth.</u>, 843 F. Supp. 981, 987 (E.D. Pa. 1994) ("While the pleading standard under [Fed. R. Civ. Proc.] Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements").

In the instant action, Plaintiff has made some broad allegations that Defendants entered an agreement or plan to deprive him of constitutional rights due to his whistle-blowing activities. Defendants again did not address Plaintiff's claims of conspiracy in their Motion.   Thus, Plaintiff's claims of conspiracy remain to be addressed in this action.

The Court notes that Defendants' moved for summary judgment on the basis of qualified immunity with absolutely no discussion of the applicability of that doctrine to Plaintiff's individual claims.   Moreover, as stated in this Court's earlier Report and Recommendation, many of Plaintiff's allegations were sufficient to demonstrate a violation of his constitution rights.   Accordingly,

Defendants have not demonstrated that they are entitled to qualified immunity.[2]

There remain issues of fact as to Plaintiff's claims concerning the censorship and confiscation of his mail; his retaliation claim; his Eighth Amendment claims; and his claims of conspiracy. Thus, Plaintiff's Motion for Summary Judgment likewise should be denied.

### III. CONCLUSION

It is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no. 38) and Plaintiff's Motion for Summary Judgment (doc. no. 35) both be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.


/s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
UNITED STATES MAGISTRATE JUDGE

Dated:    March 7, 2006

---

[2]  Nor have they demonstrated that the doctrines of res judicata or collateral estoppel are applicable as Plaintiff's allegations post-date his claims as set forth in Civ. No. 99-448.

```
cc:        Gary L. Lancaster
           United States District Judge

           Daniel J. Goodson III
           1312 Woodmont Avenue
           P.O. Box 303
           New Kensington, PA 15068

           Charles P. McCullough
           County Solicitor
           Allegheny County Law Department
           300 Fort Pitt Commons Building
           445 Fort Pitt Boulevard
           Pittsburgh, PA 15219
```